# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2026

Lyle W. Cayce
Clerk

No. 25-40367

Taylor Rose Rogers,

*Plaintiff—Appellee*,

*versus*

Ruben Espinoza; Christian Carranza,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:24-CV-38

_____

Before Southwick, Graves, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Following her guilty-plea conviction for felony evading arrest with a motor vehicle, Taylor Rogers brought this action under 42 U.S.C. § 1983. She alleged, among other claims, that Officers Ruben Espinoza and Christian Carranza used excessive force against her, in violation of her clearly established constitutional rights. Further, she asserted bystander liability against Espinoza. Both officers moved for summary judgment on qualified

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

immunity grounds. The district court, concluding factual disputes precluded summary judgment for both officers, denied the motions. But because Rogers fails to show her constitutional rights were clearly established, we reverse and render judgment in favor of the officers.

## I.

### A.

On August 19, 2021, Santa Fe Independent School District (SFISD) Chief Ruben Espinoza monitored traffic in front of the Roy J. Wollam Elementary School during morning drop-off hours. He was tasked with, *inter alia*, preventing illegal left-hand turns into the school parking lot.

Taylor Rogers—a mother dropping her son off at school—attempted such a turn and was directed by Espinoza to enter through a different entrance. Before Espinoza finished his instructions, Rogers drove away and made an improper turn into the exit of an employee parking area. Officer Elizabeth Moore (another SFISD officer), pursuing both on foot and in her patrol car, attempted to stop Rogers but was unsuccessful. Rogers, driving rapidly through a crowded school parking lot, disregarded Moore's commands to stop and shouted, "you do not touch my car!" After opening her door and dropping her dog from the vehicle, Rogers exited the parking lot, again heading in an improper direction.

Thereafter, Chief Espinoza crashed his vehicle into Rogers's in order to stop her. Espinoza and Moore, who by then had run up on foot, repeatedly directed Rogers to exit her vehicle. After Rogers opened her door, Espinoza pulled her to the ground. He then pinned Rogers's hands behind her back so Moore could handcuff her. Moore briefly held Rogers's cuffed hands behind her back before sitting up and calling for backup.

No. 25-40367

During Rogers's arrest, City of Santa Fe, Texas, Officer Christian Carranza arrived on scene and held Rogers's hands behind her back. Throughout the arrest, Rogers ignored the officers' commands and—in a state of hysteria—screamed, cursed, and thrashed about. She failed to comply when Carranza stated, "I'll stop [applying force] when you stop," and when Espinoza asked her to "remain calm." Eventually, Officer Carranza resorted to the use of a leg-leverage technique to subdue Rogers; he crossed her legs behind her and kneeled on them.

Moments later, Rogers screamed that she felt ants on her face. An unnamed officer confirmed the presence of fire ants on her. As the officers attempted to lift Rogers, she fell back to the ground screaming and was again told to "calm down." Chief Espinoza then asked the other officers if they "want[ed] to secure her in the back of [a patrol] car." The unnamed officer finally lifted Rogers from the ground and moved her to another area. At this point, a different unnamed officer stated he had "some water [to] pour on her face and get t[he] ants off." But it is not clear that anyone did so, at least at the arrest scene. The officers managed to move Rogers to a patrol car and escort her to booking, but not before she unleashed a final torrent of profanity towards them.

## B.

In the wake of this incident, Rogers pled guilty to a charge of felony evading arrest with a motor vehicle. On July 27, 2023, she brought an action in federal court under 42 U.S.C. § 1983 against Officers Espinoza and Carranza. She alleged that the officers violated her First, Fourth, and Fourteenth Amendment rights by using excessive force. Further, she asserted a bystander-liability claim against Espinoza for his alleged failure to prevent Carranza's excessive force.

3

No. 25-40367

Officers Carranza and Espinoza filed separate answers, both asserting qualified immunity.  Espinoza also requested, under Federal Rule of Civil Procedure 7, that Rogers reply to his qualified-immunity defense.  On January 5, 2024, Rogers filed her First Amended Complaint (FAC), including her response under Rule 7(b).  That response exclusively discussed Espinoza's bystander liability, stating "[h]is inactions g[a]ve rise to the 1983 claims against him."

The officers then separately moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Rogers's FAC and again asserted qualified immunity.  Rogers's response to Chief Espinoza's motion once more addressed only his bystander liability and not her excessive-force claim.  The district court dismissed the First and Fourteenth Amendment claims against both officers.  However, analyzing only the bystander-liability claim against Espinoza, the court declined to dismiss Rogers's Fourth Amendment claims against each officer.  The court stated it "w[ould] not dismiss Rogers's *excessive-force claim against Officer Carranza*" and that "Rogers . . . pleaded sufficient facts . . . to state a *bystander liability claim against Chief Espinoza*." (emphasis added).

Following discovery, Officers Espinoza and Carranza filed separate summary judgment motions on the remaining Fourth Amendment claims.  Again, both officers asserted qualified immunity.  Rogers responded to both motions, and asserted, *inter alia*, that Espinoza "did not move for summary judgment as to the excessive-force claims against him."  In reply, Espinoza countered that Rogers had abandoned the Fourth Amendment claim against him and, alternatively, argued its merits.  Carranza also filed a reply.

The district court denied the officers' summary judgment motions in a three-page order.  The court concluded that "four disputed facts preclude [granting Officer Carranza] summary judgment":

No. 25-40367

> (1) Carranza's continued use of leg leverage on Rogers after she had been subdued and stopped struggling; (2) Carranza's failure to remove Rogers from the ant pile immediately upon learning of the ants; (3) Carranza's attempt to subdue Rogers against the ground by folding her legs and kneeling on them after Carranza knew ants were on Rogers and biting her; and (4) Carranza's failure to render aid or remove the biting ants after standing Rogers up, handing her off to another officer, and escorting her to the police department.

The court concluded that "[f]or the same reasons, Carranza is also not entitled to qualified immunity. . . ."

The court relied on the same facts to conclude that Chief Espinoza was "not entitled to summary judgment . . . on the bystander-liability claim." The court also determined that "Espinoza had fair notice of Rogers's excessive-force claim" and, accordingly, was "not entitled to summary judgment on that claim because '[a]rguments raised for the first time in a reply brief are generally waived.'" Both officers timely filed interlocutory appeals. *See Ramirez v. Escajeda*, 921 F.3d 497, 499 (5th Cir. 2019) ("[W]hen a district court denies [qualified immunity], we may immediately review the denial.").

In this court, Rogers filed a motion to dismiss for lack of jurisdiction. She argues that the district court concluded genuine factual disputes precluded summary judgment, consequently barring the decision from this court's interlocutory review. The officers filed separate responses, asserting the district court's denial of qualified immunity was a legal issue. After Rogers filed a reply, this court carried the motion with the case, and we now deny it for the reasons next discussed.

## II.

5

No. 25-40367

We first decide whether this court has jurisdiction over the district court's order denying the officers summary judgment based on qualified immunity. When reviewing a denial of summary judgment on qualified immunity grounds, "our jurisdiction is generally limited to examining the *materiality* (*i.e.*, legal significance) of factual disputes the district court determined were genuine, not their genuineness (*i.e.*, existence)." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023); *see Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020).

The Supreme Court, in *Scott v. Harris*, 550 U.S. 372, 380 (2007), created "an exception to th[e materiality/genuineness] rule." *Poole v. City of Shreveport*, 13 F.4th 420, 424 (5th Cir. 2021); *see also Curran v. Aleshire*, 800 F.3d 656, 663–64 (5th Cir. 2015); *Argueta*, 86 F.4th at 1088. The exception is this: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

This case fits squarely within the *Scott* exception. Rogers paints a picture of a "restrained and defenseless woman" subjected to extreme police force. But the video evidence—via several body cameras and vantage points—is diametric to her account. Instead of a law-abiding and compliant suspect, Rogers, in an acute state of agitation, screamed, cursed, and physically resisted the officers' orders. Moreover, Officer Carranza was attentive to the situation; at two points, he told Rogers "I'll stop [applying force] when you stop [resisting]." Further, contrary to her assertion that Chief Espinoza "did nothing," he clearly asked her to "remain calm" and eventually asked the other officers if they "want[ed] to secure her in the back of [a patrol] car." Whether Espinoza's statements were *enough* is a different question, but he certainly said *something*.

In sum, we have jurisdiction to review the materiality of the factual disputes at the district court; we may also review the genuineness of those disputes to the extent that the video evidence "utterly discredit[s]" Rogers's version of the facts. *Id.* In other words, we analyze "the facts in the light depicted by the videotape." *Id.* at 381.

## III.

Turning to the parties' substantive arguments, we next determine whether the district court erred in denying summary judgment to the officers. First, we examine Rogers's claims against Chief Espinoza for excessive force and bystander liability. We then analyze her excessive force claim against Officer Carranza.

## A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When a public official makes 'a good-faith assertion of qualified immunity,' [however,] that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Joseph*, 981 F.3d at 329–30 (citation omitted). "The plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury." *Id.* at 330.

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (internal quotation, alteration and citation omitted). "Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating that '(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time.'" *McClelland v. Katy*

*Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023) (citing *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)).

"Where 'it is plain that a constitutional right is not clearly established,' the Supreme Court permits us not to reach the underlying constitutional merits." *Joseph*, 981 F.3d at 346 (OLDHAM, J., concurring) (citing *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)). As discussed *infra*, Rogers's rights are not clearly established for her claims against either officer. Accordingly, we pretermit analysis of any alleged constitutional violation.

**1.**

We turn to Rogers's excessive-force claim against Chief Espinoza. "This circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." *McClelland*, 63 F.4th at 1010. In *McClelland*, the plaintiff "failed to defend or reassert his retaliation and compelled speech claims on three separate occasions prior to []his appeal." *Id.* These failures came after the defendants "clearly stated that they were moving to dismiss all of [p]laintiff's claims and even listed free speech retaliation as one of those claims." *Id.* (internal quotation omitted).

Like the plaintiff in *McClelland*, Rogers "failed to defend or reassert" her claim for excessive force against Chief Espinoza. *Id.* In her FAC, the operative pleading, Rogers glancingly carried forward allegations about Espinoza's ramming her vehicle. But she clarified in her Rule 7 reply to Espinoza's assertion of qualified immunity that "[h]is *inactions* g[a]ve rise to the 1983 claims against him." (emphasis added). Her Rule 7 reply affirmatively pled: "In the amended complaint above, [p]laintiff explains that Chief Espinoza was liable for the injuries to plaintiff through bystander liability and because he failed to render aid to [p]laintiff."

More clearly, in her response to Chief Espinoza's ensuing Rule 12(b)(6) motion, Rogers re-asserted that her "claims against Espinoza [we]re for his inactions, not for his actions." And this came after Espinoza moved to dismiss "all of Rogers's claims." Espinoza stated in his motion that "[r]eview of Rogers's [FAC] reveals that [he wa]s not accused of participating in the incident leading to Rogers's alleged injuries . . . . Thus, for Chief Espinoza to be liable, Rogers must attribute bystander liability to his purported action." And in adjudicating the officers' Rule 12(b)(6) motions, the court discussed only bystander liability for Espinoza, not his alleged excessive force.

Rogers could not resurrect her excessive force claim against Chief Espinoza in response to his summary judgment motion. "It is well settled in our circuit that a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (internal quotation and citation omitted). Rather, she abandoned that claim, if not in her FAC, in her response to Espinoza's motion to dismiss. Accordingly, the district court's adjudicating her excessive force claim at summary judgment was legal error. *See, e.g.*, *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (holding "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court").[1]

As for Rogers's bystander-liability claim, she asserts Chief Espinoza "failed to intervene as he stood idly watching Carranza use pain compliance techniques on a restrained and defenseless woman for over 2 minutes . . . ."

---

[1] Regardless, her excessive-force claim also fails on the merits. She cites no authority to show her allegedly violated rights were clearly established at the time. *See McClelland*, 63 F.4th at 1005.

To show a constitutional violation, she must demonstrate that Espinoza: "(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph*, 981 F.3d at 343. We need not decide whether a violation occurred because, as discussed below, she fails to show her rights were clearly established. *Id.* at 346 (OLDHAM, J., concurring).

For Rogers to prove her rights were clearly established, she must "identify a case—usually a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution." *Id.* at 330 (internal quotation, alterations, and citation omitted). "While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Id.* (citation omitted).

The cases Rogers cites in support of her position are inapposite to bystander liability—they concern only direct excessive-force claims. In other words, the cases show a plaintiff's right to be free from certain *actions*; not *inaction* by an officer not involved in the use of force. Accordingly, she fails to substantiate that her rights were clearly established at the time of Chief Espinoza's alleged violation.

**2.**

We turn to Rogers's excessive-force claim against Officer Carranza. "To prevail on an excessive force claim, a plaintiff must show '(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016) (citation omitted).

For Rogers to show her rights were clearly established, she must pinpoint cases from this court or the Supreme Court showing a constitutional

violation by "an officer acting under similar circumstances . . . ." *Joseph*, 981 F.3d at 330 (internal quotation, alterations, and citation omitted). "While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Id.* (citation omitted).

Rogers takes issue with Officer Carranza's use of leverage techniques to subdue her, alleging those techniques constituted excessive force. For support, she cites multiple cases, contending they clearly establish that violation. But the cases Rogers offers do not sustain her claim.

The facts in *Joseph* bear no resemblance to this matter. There, the officers "kicked [plaintiff] twelve to thirteen times . . . [and] punched [him] in the head three times." *Id.* at 327. In *Ramirez v. Martinez*, the officer "tased [plaintiff] in the chest" in response to his non-compliance. 716 F.3d 369, 372 (5th Cir. 2013). The officers in *Deville*, "[i]n response to [plaintiff's] passive resistance, . . . broke her window, pulled her out of her car, and threw her up against the vehicle." *Solis v. Serrett*, 31 F.4th 975, 986 (5th Cir. 2022) (discussing *Deville v. Marcantel*, 567 F.3d 156, 162 (5th Cir. 2009)). *Goodson* is also distinguishable—the officers there "tackled a plaintiff to the ground, broke his shoulder, jerked his arm back, and cuffed him after he complained his arm was broken." *Solis*, 31 F.4th at 986 (discussing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 734 (5th Cir. 2000)). Moreover, the officers in *Goodson* "lacked reasonable suspicion to detain or frisk [Goodson]," 202 F.3d at 740, while Rogers's flight gave Carranza the requisite suspicion to apply the force he did. Finally, the officer in *Doss v. Helpenstell* "brutally and without provocation punched [plaintiff] several times in the head and struck him with his pistol." 626 F. App'x 453, 455 (5th Cir. 2015). "Suffice it to say, a reasonable police officer could miss the connection between the situation[s]" in those cases and here. *Kisela v. Hughes*, 584 U.S. 100, 108 (2018). Those cases either involved passive resistance, contrasting with Rogers' active and vociferous resistance, or substantially more force than was

11

applied here, absent the very regrettable presence of an ant bed right where the officers took Rogers to the ground—something the officers did not know until Rogers alerted them of the danger.

Because Rogers fails to point to analogous case law, she is left with the burden of showing that this is a "'rare' . . . [or] 'obvious case,' [where] analogous case law 'is not needed' because 'the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (internal alterations and citation omitted). "In [such] an obvious case, the *Graham* excessive-force factors themselves can clearly establish the law without a body of relevant precedent." *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 300 (5th Cir. 2023) (internal quotation, alterations, and citation omitted). The *Graham* "[f]actors . . . include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight.'" *Deville*, 567 F.3d at 167 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"The standard for obviousness is sky high, and this case does not meet it." *Joseph*, 981 F.3d at 337. Officer Carranza's conduct, even when viewed in a light most favorable to Rogers, hardly rises to the level of those in cases where this court concluded the *Graham* factors themselves clearly established the plaintiff's rights. *See, e.g.*, *Aguirre v. City of San Antonio*, 995 F.3d 395, 415–16 (5th Cir. 2021) (holding *Graham* factors showed clearly established right when officers hog-tied plaintiff until he asphyxiated); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding *Graham* factors themselves clearly established plaintiff's rights where officer "should have known that he could not forcefully slam [her] face into a vehicle while she was restrained and subdued."); *Newman v. Guedry*, 703 F.3d 757, 764 (5th

No. 25-40367

Cir. 2012) (holding *Graham* factors clearly established plaintiff's rights where officer tased complaint plaintiff after severely battering him).

\* \* \*

Officers Espinoza and Carranza are entitled to qualified immunity on Rogers's claims. She abandoned her excessive force claim against Espinoza, and she fails to show her rights were clearly established concerning his alleged bystander liability for other officers' actions. Rogers's excessive force claim against Carranza fails for the same reason—her rights were not clearly established at the time of the alleged violation.

For the foregoing reasons, we DENY Rogers's motion to dismiss for lack of jurisdiction and REVERSE AND RENDER the district court's order denying Chief Espinoza and Officer Carranza summary judgment on their defense of qualified immunity.